# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## STATESBORO DIVISION

| | |
|---|---|
| OMMIE CHRISTIAN, | |
| Plaintiff, | CIVIL ACTION NO.: 6:15-cv-38 |
| v. | |
| WARDEN RANDY TOOLE; MS. THOMAS; MS. REGISTER; MR. ALLEN; LARRY BREWTON; MR. DELOUCHE; MR. FOWLER; and MR. BROOKS, | |
| Defendants. | |

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently housed at Hays State Prison in Trion, Georgia, submitted a Complaint in the above captioned action pursuant to 42 U.S.C. § 1983 contesting certain conditions of his confinement when he was housed at Georgia State Prison in Reidsville, Georgia. (Doc. 1.) The Court has conducted the requisite frivolity review of that Complaint. I **RECOMMEND** that the Court **DISMISS** Plaintiff's claims against all Defendants in their official capacities. I further **RECOMMEND** that the Court **DISMISS** all of Plaintiff's claims against Defendants DeLouche and Fowler and **DISMISS** Plaintiff's claims based on supervisory liability. The Court should **DENY** Plaintiff's request for injunctive relief as moot. Additionally, to the extent Plaintiff seeks to assert claims relating to an incident on November 1, 2013, those claims should be **DISMISSED**. Moreover, I **RECOMMEND** that the Court **DISMISS** Plaintiff's Eighth Amendment failure to protect claims, as well as all of his state law claims. However, Plaintiff has stated viable Eighth Amendment failure to intervene claims against Defendants Toole, Thomas, Register, Brooks, and Allen, and those claims should proceed.

Consequently, the Court hereby **ORDERS** that the Complaint be served on Defendants Toole, Thomas, Register, Brooks, and Allen.

The Court provides additional instructions to Plaintiff and Defendants pertaining to the future litigation of this action, which the parties are urged to read and follow.

## BACKGROUND[1]

Plaintiff filed this action against eight Defendants: Randy Toole, the Warden at Georgia State Prison ("GSP"); Ms. Thomas, Ms. Register, Mr. Brooks, and Mr. Allen, correctional officers at GSP; Larry Brewton, the Unit Manager at GSP; Mr. DeLouche, a Major at GSP; and Mr. Fowler, the Deputy Warden at GSP. (Id. at p. 4.) Plaintiff's claims stem from an attack he suffered at the hands of another inmate on October 17, 2013. (Id. at p. 7.) Plaintiff alleges that Defendants' lapses in safety measures prior to the attack failed to protect him from the attack and that Defendants failed to intervene during the attack. Id.

On the date of the attack, Plaintiff and his roommate were escorted from their cell to a recreation pen for one hour of recreation. Id. At the end of the recreation period, Defendant Thomas handcuffed Plaintiff's and his roommate's hands behind their back and told them to exit the recreation pen and walk back to their dorm. Id. Defendant Register told Plaintiff and his roommate to continue to his dorm room without an escort, which Plaintiff contends is against proper procedure. Id. Once Plaintiff reached the top of the stairs, Officer Allen was in the vicinity. Id. Then, "without warning", Plaintiff was stabbed by Inmate Porter (who is not Plaintiff's roommate) several times from behind. According to Plaintiff, Inmate Porter should have been locked in a secure recreation pen. (Id. at pp. 7–8.)

---

[1] The below recited facts are taken from Plaintiff's Complaint and are accepted as true, as they must be at this stage.

Once the attack took place, no officers in the area intervened on Plaintiff's behalf to try and stop the assault. (Id.at p. 8.) Plaintiff states that at the beginning of the attack, Ms. Thomas, Ms. Register, Mr. Allen, and Mr. Brooks were in the area. Id. Once Plaintiff saw none of these officers were trying to stop the attack, he attempted to run from Inmate Porter, but Inmate Porter chased Plaintiff down and continued to stab him. Id. At this point, more officers arrived, including Defendants Toole and Brewton. Id. However, none of the officers attempted to stop the assault or otherwise intervene. Id. Inmate Porter stopped the attack "on his own free will." Id. Plaintiff was then escorted to the medical unit where he was diagnosed with a punctured lung, and he was then rushed to a local hospital for treatment for several days. Id.

When Plaintiff was discharged from the hospital, he returned to GSP. (Id. at p. 9.) Plaintiff then spoke with Defendants Toole, DeLouche, and Fowler regarding the incident, and he requested, among other things, to be transferred out of GSP. Id.

Plaintiff states that on November 1, 2013, he was placed back in a cell. (Id.at p. 10.) On that same date, a correctional officer used pepper spray against Plaintiff because he requested personal property to begin his grievance paper work. Id. On December 7, 2013, Defendant Toole transferred Plaintiff to Hays State Prison. Id.

## STANDARD OF REVIEW

Plaintiff seeks to bring this action *in forma pauperis* under 42 U.S.C. § 1983. Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all of his assets and shows an inability to pay the filing fee and also includes a statement of the nature of the action which shows that he is entitled to redress. Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous, malicious, or fails to state a claim upon which relief may be

granted. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii). Additionally, pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity. Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous, malicious, fails to state a claim upon which relief may be granted, or which seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

When reviewing a Complaint on an application to proceed *in forma pauperis*, the Court is guided by the instructions for pleading contained in the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances). Further, a claim is frivolous under Section 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'" Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under Section 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010). Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555. Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and

dismiss those claims whose factual contentions are clearly baseless." Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys.") (emphasis omitted) (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

## DISCUSSION

### I.     Section 1983 Official Capacity Claims

Plaintiff cannot sustain a Section 1983 claim against Defendants in their official capacities. States are immune from private suits pursuant to the Eleventh Amendment and traditional principles of state sovereignty. Alden v. Maine, 527 U.S. 706, 712–13 (1999). Section 1983 does not abrogate the well-established immunities of a state from suit without its consent. Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989). Because a lawsuit against a state officer in his official capacity is "no different from a suit against the [s]tate itself," such a defendant is immune from suit under Section 1983. Id. at 71. Here, the State of Georgia would be the real party in interest in a suit against Defendants in their official capacities as officers at a state penal institution. Accordingly, the Eleventh Amendment immunizes these actors from suit in their official capacities. See Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989). Absent a

waiver of that immunity, Plaintiff cannot sustain any constitutional claims against Defendants in their official capacities, and these claims should be **DISMISSED**.

## II.     Section 1983 Supervisory Liability Claims

In Section 1983 actions, liability must be based on something more than a theory of respondeat superior.  Bryant v. Jones, 575 F.3d 1281, 1299 (11th Cir. 2009); Braddy v. Fla. Dep't of Labor & Emp't Sec., 133 F.3d 797, 801 (11th Cir. 1998).  A supervisor may be liable only through personal participation in the alleged constitutional violation or when there is a causal connection between the supervisor's conduct and the alleged violations.  Id. at 802.  "To state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct."  Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011).

It appears Plaintiff wishes to hold Defendants DeLouche and Fowler liable based solely on their supervisory positions as GSP.  The only involvement that Plaintiff mentions regarding these two Defendants is that they spoke with Plaintiff while he was in the medical unit after the attack.  (Doc. 1, p. 9.)  Consequently, Plaintiff has not established that these Defendants had any personal involvement in the violation of his constitutional rights or that there is any causal connection between their conduct and the violation.  Thus, the Court should **DISMISS** all federal claims against Defendants DeLouche and Fowler.

As set forth below, Plaintiff has sufficiently alleged that Defendants Toole and Brewton personally participated in the violation of his constitutional rights by failing to intervene while

being present at the assault.  However, to the extent that Plaintiff attempts to hold Defendants Toole and Brewton liable based on a theory of supervisory liability, the Court should also **DISMISS** any such claim.

### III.    Claims for Injunctive Relief

Plaintiff includes in his prayer for relief that the Court issue "a preliminary and permanent injunction ordering Defendants Toole, Thomas, Register, Brooks, Allen, Brewton, DeLouche, Fowler to make sure and seek [sic] that an incident like my very own never happens again . . . ."  (Doc. 1, p. 6.)  However, Plaintiff has been transferred from GSP to Hays State Prison.  An inmate's claim for injunctive relief against prison officials is subject to dismissal for mootness when the prisoner is transferred to another prison and is no longer under the control of the prison officials against whom injunctive relief is sought.  Spears v. Thigpen, 846 F.2d 1327, 1328 (11th Cir. 1988) (per curiam); Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985) (per curiam ) ("Absent class certification, an inmate's claim for injunctive relief and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred.")  Thus, the Court should **DISMISS AS MOOT** Plaintiff's claims for injunctive relief.

### IV.    Claims Arising out of November 1, 2013, Incident

Plaintiff states that, on November 1, 2013, he was placed back in a cell and that an unnamed officer used pepper spray against him.  (Doc. 1, p. 10.)  However, Plaintiff does not allege whether, much less how, Defendants had any involvement in this incident.  Furthermore, any claims stemming from a November 1, 2013, incident do not appear to be related to the October 17, 2013, assault.  Plaintiff cannot pursue unrelated claims in one Section 1983 Complaint.  Smith v. Owens, No. 14-14039, 2015 WL 4281241, at *4 (11th Cir. July 16, 2015)

(upholding this Court's dismissal of unrelated claims pursuant to Federal Rule of Civil Procedure 20(a), which will allow the joinder of claims if the claims arise "out of the same transaction, occurrence, or series of transactions or occurrences" and if "any question of law or fact common to all defendants will arise in the action.").Thus, to the extent that Plaintiff attempts to assert any claims arising out of the November 1, 2013, incident, those claims should be **DISMISSED**.

## V.     Eighth Amendment Claims

In order to state a claim for relief under Section 1983, Plaintiff must satisfy two elements. First, he must allege that an act or omission deprived him "of some right, privilege, or immunity secured by the Constitution or laws of the United States." Hale v. Tallapoosa Cty., 50 F.3d 1579, 1582 (11th Cir. 1995). Second, Plaintiff must allege that the act or omission was committed by "a person acting under color of state law." Id.

The Eighth Amendment imposes duties on prison officials including the duty to take reasonable measures to ensure the safety of inmates. Farmer v. Brennan, 511 U.S. 825, 828 (1994). This right to safety is violated when prison officials show a deliberate indifference to a substantial risk of serious harm. Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003) (citing Farmer, 511 U.S. at 828). In order to prevail on such a claim, the plaintiff must establish the following: (1) there was a substantial risk of serious harm to him; (2) defendant showed a deliberate indifference to this risk; and (3) there is a causal connection between the defendant's acts or omissions and the alleged constitutional deprivation. Id.

### A.     Eighth Amendment Failure to Protect Claims

Many of Plaintiff's allegations center on Defendants' acts and omissions prior to the attack by Inmate Porter. For example, he states that Inmate Porter "had no business escaping [a recreation cage] with a knife when [he was] supposed to be properly searched . . . ." (Doc. 1,

p. 9.)  Plaintiff also takes issue with the officers' failure to escort Plaintiff down the hallway while he was handcuffed to protect him as is required by a standard operating procedure.  <u>Id.</u>  He argues that the Defendants should have known that Inmate Porter was not in his recreation pen and that he had a weapon.  (<u>Id.</u> at p. 10.)

"To be deliberately indifferent a prison official must know of and disregard 'an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"  <u>Id.</u> (quoting <u>Purcell ex rel. Estate of Morgan v. Toombs Cty., Ga.</u>, 400 F.3d 1313, 1319–20 (11th Cir. 2005)).  Whether a substantial risk of serious harm exists so that the Eighth Amendment might be violated involves a legal rule that takes form through its application to facts.  However, "simple negligence is not actionable under § 1983, and a plaintiff must allege a conscious or callous indifference to a prisoner's rights."  <u>Smith v. Reg'l Dir. of Fla. Dep't of Corr.</u>, 368 F. App'x 9, 14 (11th Cir. 2010).  In other words, "to find deliberate indifference on the part of a prison official, a plaintiff inmate must show: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence."  <u>Thomas v. Bryant</u>, 614 F.3d 1288, 1312 (11th Cir. 2010).

Prison officials are not held liable for every attack by one inmate upon another, <u>Zatler v. Wainwright</u>, 802 F.2d 397, 400 (11th Cir. 1986), nor are they guarantors of a prisoner's safety.  <u>Popham v. City of Talladega</u>, 908 F.2d 1561, 1564 (11th Cir. 1990).  Rather, a prison official must be faced with a known risk of injury that rises to the level of a "strong likelihood rather than a mere possibility" before his failure to protect an inmate can be said to constitute deliberate indifference.  <u>Brown v. Hughes</u>, 894 F.2d 1533, 1537 (11th Cir. 1990).

Like any deliberate indifference claim, a plaintiff must satisfy both an objective and a subjective inquiry to establish a failure to protect claim. Chandler v. Crosby, 379 F.3d 1278, 1289–90 (11th Cir. 2004). Under the objective component, a plaintiff must prove the condition he complains of is sufficiently serious to violate the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 8 (1992). As for the subjective component, "the prisoner must prove that the prison official acted with 'deliberate indifference.'" Miller v. King, 384 F.3d 1248, 1260-61 (11th Cir. 2004) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). To prove deliberate indifference, the prisoner must show that prison officials "'acted with a sufficiently culpable state of mind'" with regard to the serious prison condition at issue. Id. (quoting Chandler, 379 F.3d at 1289–90).

"It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment[ ] Clause." McCoy v. Webster, 47 F.3d 404, 408 (11th Cir. 1995). Furthermore, "[t]o be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." Id. (alteration in original) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). In other words, "[m]erely negligent failure to protect an inmate from attack does not justify liability under § 1983." Stuckey v. Thompson, No. CV405–216, 2007 WL 1035134, *5 (S.D. Ga. Mar. 29, 2007) (quoting Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990)).

Plaintiff has not made any allegation that Inmate Porter posed any risk to Plaintiff's safety prior to the November 1, 2013, incident, or that Defendants were aware of any risk to Plaintiff's safety—from Inmate Porter or any other source—prior to the attack. A review of Plaintiff's Complaint fails to reveal any allegation indicating that Defendants were subjectively

aware of any objective risk to Plaintiff's safety prior to the attack by Inmate Porter. See Thomas, 614 F.3d at 1312, *supra*. Plaintiff himself describes the attack as sudden and "without warning." (Doc. 1, pp. 7–8.) Even if Defendants had been aware that Inmate Porter had a history of violence (which Plaintiff does not allege), allegations of a jail official's generalized awareness that someone is "'a problem inmate' with a well-documented history of prison disobedience and [is] prone to violence'" "is not enough to show [his] subjective awareness that the inmate poses a substantial risk of serious harm" to other inmates. Gross v. White, 340 F. App'x 527, 531 (11th Cir. 2009) (first alteration in original) (quoting Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003)). Additionally, while Defendants' alleged violation of standard operating procedures may constitute negligence, it does not support a deliberate indifference claim under the Eighth Amendment. See Coleman v. Terry, No. 5:11-CV-496-MTT-MSH, 2012 WL 6216749, at *4 (M.D. Ga. Nov. 20, 2012) *report and recommendation adopted*, No. 5:11-CV-496 MTT, 2012 WL 6212804 (M.D. Ga. Dec. 13, 2012) (violation of prison's standard operating procedure for officers to hold onto inmates when they are handcuffed and going down the stairs does not allege deliberate indifference but instead alleges negligence at best).

Accordingly, Plaintiff has failed to state sufficient allegations that Defendants committed constitutional violations with their acts and omissions prior to the attack by Inmate Porter. Thus, Plaintiff's Eighth Amendment claims based on a theory of failure to protect should be **DISMISSED**.

### B. Eighth Amendment Failure to Intervene Claims

In addition to the above described duty to protect an inmate from a potential attack in certain situations, the Eighth Amendment can also impose upon prison officials the duty to intervene in some cases. In Johnson v. Boyd, 568 F. App'x 719 (11th Cir. 2014), the Eleventh

Circuit found that the plaintiff failed to state a claim for failure to intervene where another inmate attacked the plaintiff but the complaint was lacking any allegations about the duration of the fight or that "the officers waited an unreasonable amount of time to intervene after Hanley attacked [the plaintiff]." The court stated:

> The district court partially construed Johnson's complaint as a 'failure to intervene' claim, citing Ensley v. Soper, 142 F.3d 1402, 1407 (11th Cir. 1998), which holds that an officer has a duty to intervene if he observes a constitutional violation and is in a position to intervene. While it is well settled that Ensley applies to situations where one officer observes a fellow officer violating a constitutional right, typically by using excessive force, we have not explicitly adopted this holding in a situation involving an officer observing a fight between inmates.

Id. at 722 n.2 (emphasis added) (internal citation omitted).

Despite this footnote, the Eleventh Circuit has held that a prison official can be liable under the Eighth Amendment for failing to take reasonable steps to intervene on behalf of the victim of an ongoing assault by another inmate. Murphy v. Turpin, 159 F. App'x 945, 948 (11th Cir. 2005) (applying deliberate indifference standard to claim that prison official failed to intervene in inmate-on-inmate assault). "Prison correctional officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence." Terry v. Bailey, 376 F. App'x 894, 896 (11th Cir. 2010) (citing Ensley, 142 F.3d at 1407). "However, in order for liability to attach, the officers must have been in a position to intervene." Id. (internal citation omitted). Indeed, the Eleventh Circuit found in Johnson that a failure to intervene claim, similar to a failure to protect claim, would require allegations that (1) another inmate's physical assault created a substantial, objective risk of injury, (2) of which a defendant is subjectively aware, (3) the defendant was in a position to intervene, and (4) the defendant did not respond reasonably to the risk of injury. See 568 F. App'x at 724–25.

Here, Plaintiff's allegations satisfy the prima facie elements of an Eighth Amendment failure to intervene claim against Defendants Toole, Thomas, Register, Brooks, Allen, and Brewton. First, Inmate Porter's attack created an objective risk of injury to Plaintiff. Second, Plaintiff alleges that these six Defendants were subjectively aware of the attack because they were either in the process of escorting Plaintiff to his cell when Inmate Porter attacked Plaintiff or they arrived to the scene during the attack. Third, the Complaint infers that these six Defendants were in a position to intervene by alleging that these six Defendants stood nearby and witnessed Inmate Porter attacking Plaintiff while Plaintiff was handcuffed and on his back. Fourth, the Complaint plausibly alleges that Defendants did not respond reasonably to the risk by asserting, among other things: that numerous officers were in close proximity of the attack; that Inmate Porter stabbed Plaintiff repeatedly; that at least one officer had pepper spray; that even though Plaintiff was able to run away from Inmate Porter for a brief period, the officers did not intervene; and that the attack was allowed to go on for a long enough period that Inmate Porter eventually stopped the attack on his own free will.

For these reasons, Plaintiff's Eighth Amendment claims based on a theory of failure to intervene should proceed against Defendants Toole, Thomas, Register, Brooks, Allen, and Brewton.

## VI.    State Law Claims

Plaintiff has asserted pendent state claims that Defendants breached a duty owed to him by negligently failing to protect him and keep him free from harm.[2] Plaintiff brings these claims against Defendants in their individual and official capacities.

---

[2] This Court can consider these claims under the supplemental jurisdiction of 28 U.SC. 1367 as they arise from the same case and controversy as Plaintiff's federal claims.

Suit against these Defendants in their official capacities is the same as a suit against the State of Georgia. Again, Georgia is immune from private suits pursuant to the Eleventh Amendment and traditional principles of state sovereignty. <u>Alden</u>, 527 U.S. at 712–13, *supra*. Further, "[p]ursuant to [Georgia's] state constitution, sovereign immunity insulates the state and its departments and agencies from liability except to the extent that the legislature enacts a specific waiver." <u>Southerland v. Ga. Dep't of Corr.</u>, 666 S.E.2d 383, 385 (Ga. Ct. App. 2008); Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e). The Georgia Tort Claims Act ("GTCA") provides that the "state waives its sovereign immunity for the torts of state officers and employees while acting within the scope of their official duties or employment." O.C.G.A. § 50-21-23(a). However, the GTCA also provides thirteen categories of losses for which the state has not waived sovereign immunity. O.C.G.A. § 50-21-24. These exceptions include losses arising from assault and battery. O.C.G.A. § 50-21-24(7). "This exception has been interpreted to mean that 'where a loss results from assault or battery, there is no waiver of sovereign immunity, even though a private individual or entity would be liable under like circumstances.'" <u>Southerland</u>, 666 S.E.2d at 385 (quoting <u>Dep't of Human Res. v. Coley</u>, 544 S.E.2d 165, 167 (Ga. Ct. App. 2000)).

In <u>Southerland</u>, the mother of a deceased inmate brought state law claims against the Department of Corrections for its officers' failure to protect her son from a fatal attack by another inmate. 666 S.E.2d at 384. The Georgia Court of Appeals affirmed the trial court's dismissal of these claims because, due to the assault and battery exception to the GTCA, the state had not waived its sovereign immunity for the mother's claims. <u>Id.</u> at 385. In other words, even though the assault and battery was inflicted by someone other than the state officer or employee, because the act causing the underlying loss constituted a battery (i.e., the beating of the decedent

by a fellow inmate), O.C.G.A. § 50-21-24(7)'s exception to the waiver of sovereign immunity applied. Id.

The decision in Southerland is controlling in the case at hand where Plaintiff seeks to assert state law claims against state actors for losses that were caused by an assault and battery. Consequently, Plaintiff's state law claims against Defendants in their official capacities are barred by sovereign immunity.

Plaintiff also sues Defendants in their individual capacity. Sovereign immunity "does not protect state employees sued in their individual capacity for employment-related acts." Jackson v. Ga. Dept. of Transp., 16 F.3d 1573, 1575 (11th Cir. 1994). However, the GTCA provides, "[t]his article constitutes the exclusive remedy for any tort committed by a state officer or employee. A state officer or employee who commits a tort while acting within the scope of his or her official duties or employment is not subject to lawsuit or liability therefor." O.C.G.A. § 50-21-25(a). This state law exemption from individual liability for state officers and employees has been construed broadly. See Romano v. Ga. Dep't of Corr., 693 S.E.2d 521, 525 (Ga. Ct. App. 2010) (dismissing state law conversion claims against correction officers); Davis v. Standifer, 621 S.E.2d 852 (Ga. Ct. App. 2005). "Since there is no exemption in [O.C.G.A.] § 50-21-25 for acts motivated by malice or intent to injure, the presence of such motivation has no effect on the immunity granted by this statute." Ridley v. Johns, 552 S.E.2d 853, 854 (Ga. 2001). "Where the state employee acts in the prosecution and within the scope of his official duties, intentional wrongful conduct comes within and remains within the scope of employment." Romano, 693 S.E.2d at 525 (quoting Ford v. Caffrey, 666 S.E.2d 623, 626 (Ga. Ct. App. 2008)); see also Minor v. Barwick, 590 S.E.2d 754, 762–63 (Ga. Ct. App. 2003)

(official immunity under O.C.G.A. § 50-21-25(a) applies even when a state correctional officer acted with malice and intent to injure).

Plaintiff sues Defendants for actions that were taken within the scope of their employment as state correctional officers. Consequently, under O.C.G.A. § 50-21-25(a), Plaintiff cannot hold Defendants individually liable under state law.

In sum, Plaintiff fails to assert viable state law claims against Defendants in their individual or official capacities. Consequently, the Court should **DISMISS** all of Plaintiff's state law claims.

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** that the Court **DISMISS** Plaintiff's claims against all Defendants in their official capacities. I further **RECOMMEND** that the Court **DISMISS** all of Plaintiff's claims against Defendants DeLouche and Fowler and **DISMISS** Plaintiff's claims based on supervisory liability. The Court should **DENY** Plaintiff's request for injunctive relief as moot. Additionally, to the extent Plaintiff seeks to assert claims relating to an incident on November 1, 2013, those claims should be **DISMISSED**. Moreover, I **RECOMMEND** that the Court **DISMISS** Plaintiff's Eighth Amendment failure to protect claims, and **DISMISS** all of his state law claims.

Any party seeking to object to this Report and Recommendation is **ORDERED** to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be

served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the Plaintiff.

## REMAINING CLAIMS AND REMAINING DEFENDANTS

Plaintiff's allegations arguably state colorable claims for relief under 42 U.S.C. § 1983 against Defendants Toole, Thomas, Register, Brooks, Allen, and Brewton for violation of the duty to intervene under the Eighth Amendment. Consequently, a copy of Plaintiff's Complaint and a copy of this Order shall be served upon Defendants Toole, Thomas, Register, Brooks, Allen, and Brewton by the United States Marshal without prepayment of cost.

The Court also provides the following instructions to the parties that will apply to the remainder of this action and which the Court urges the parties to read and follow.

## <u>INSTRUCTIONS TO DEFENDANTS</u>

Because Plaintiff is proceeding *in forma pauperis,* the undersigned directs that service be effected by the United States Marshal. Fed. R. Civ. P. 4(c)(3). In most cases, the marshal will first mail a copy of the complaint to the Defendants by first-class mail and request that the

Defendants waive formal service of summons. Fed. R. Civ. P. 4(d); Local Rule 4.7. Individual and corporate defendants have a duty to avoid unnecessary costs of serving the summons, and any such defendant who fails to comply with the request for waiver must bear the costs of personal service unless good cause can be shown for the failure to return the waiver. Fed. R. Civ. P. 4(d)(2). Generally, a defendant who timely returns the waiver is not required to answer the complaint until sixty (60) days after the date that the marshal sent the request for waiver. Fed. R. Civ. P. 4(d)(3).

**IT IS FURTHER ORDERED** that Defendants are hereby granted leave of court to take the deposition of the Plaintiff upon oral examination. Fed. R. Civ. P. 30(a). Defendants are further advised that the Court's standard 140 day discovery period will commence upon the filing of the last answer. Local Rule 26.1. Defendants shall ensure that all discovery, including the Plaintiff's deposition and any other depositions in the case, is completed <u>within that discovery period</u>.

In the event that Defendants take the deposition of any other person, Defendants are ordered to comply with the requirements of Federal Rule of Civil Procedure 30. As the Plaintiff will likely not be in attendance for such a deposition, Defendants shall notify Plaintiff of the deposition and advise him that he may serve on Defendants, in a sealed envelope, within ten (10) days of the notice of deposition, written questions the Plaintiff wishes to propound to the witness, if any. Defendants shall present such questions to the witness seriatim during the deposition. Fed. R. Civ. P. 30(c).

## INSTRUCTIONS TO PLAINTIFF

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants or, if appearance has been entered by counsel, upon their attorneys, a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct copy of any document was mailed to Defendants or their counsel. Fed. R. Civ. P. 5. "Every pleading shall contain a caption setting forth the name of the court, the title of the action, [and] the file number." Fed. R. Civ. P. 10(a).

Plaintiff is charged with the responsibility of immediately informing this Court and defense counsel of any change of address during the pendency of this action. Local Rule 11.1. Plaintiff's failure notify the Court of a change in his address may result in dismissal of this case.

Plaintiff has the responsibility for pursuing this case. For example, if Plaintiff wishes to obtain facts and information about the case from Defendants, Plaintiff must initiate discovery. See generally, Fed. R. Civ. P. 26, *et seq.* The discovery period in this case will expire 140 days after the filing of the last answer. Local Rule 26.1. Plaintiff does not need the permission of the Court to begin discovery, and Plaintiff should begin discovery promptly and complete it within this time period. Local Rule 26.1. Discovery materials should **not** be filed routinely with the Clerk of Court; exceptions include: when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial. Local Rule 26.4.

Interrogatories are a practical method of discovery for incarcerated persons. See Fed. R. Civ. P. 33. Interrogatories may be served only on a party to the litigation, and, for the purposes of the instant case, this means that interrogatories should not be directed to persons or

organizations who are not <u>named</u> as Defendants.  Interrogatories are not to contain more than twenty-five (25) questions.  Fed. R. Civ. P. 33(a).  If Plaintiff wishes to propound more than twenty-five (25) interrogatories to a party, Plaintiff must have permission of the Court.  If Plaintiff wishes to file a motion to compel, pursuant to Federal Rule of Civil Procedure 37, he should first contact the attorneys for Defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery.  Fed. R. Civ. P. 26(c); 37(a)(2)(A); Local Rule 26.7.

Plaintiff has the responsibility for maintaining his own records of the case.  If Plaintiff loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard cost of fifty cents ($.50) per page.  **If Plaintiff seeks copies, he should request them directly from the Clerk of Court and is advised that the Court will authorize and require the collection of fees from his prison trust fund account to pay the cost of the copies at the aforementioned rate of fifty cents ($.50) per page.**

If Plaintiff does not press his case forward, the court may dismiss it for want of prosecution.  Fed. R. Civ. P. 41; Local Rule 41.1.

It is Plaintiff's duty to cooperate fully in any discovery which may be initiated by Defendants.  Upon no less than five (5) days' notice of the scheduled deposition date, the Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath or solemn affirmation, any question which seeks information relevant to the subject matter of the pending action.  Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, <u>including dismissal of this case</u>.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order. A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is <u>required</u> to prepare and file his own version of the Proposed Pretrial Order. A plaintiff who is incarcerated shall not be required or entitled to attend any status or pretrial conference which may be scheduled by the Court.

## ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within fourteen (14) days of its service. "Failure to respond shall indicate that there is no opposition to a motion." Local Rule 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose the Defendants' motion. Plaintiff's case may be dismissed for lack of prosecution if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within twenty-one (21) days after service of the motion. Local Rules 7.5, 56.1. The failure to respond to such a motion shall indicate that there is no opposition to the motion. Furthermore, each material fact set forth in the Defendants' statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. Should Defendants file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine dispute as to any material fact in this case. That burden cannot be carried by reliance on the conclusory allegations contained within the complaint. Should the Defendants' motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest the Defendants' statement of the facts. Should Plaintiff fail to file opposing

affidavits setting forth specific facts showing that there is a genuine dispute for trial, any factual assertions made in Defendants' affidavits will be accepted as true and summary judgment may be entered against the Plaintiff pursuant to Federal Rule of Civil Procedure 56.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 11th day of December, 2015.

_____
R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA