# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

OMMIE CHRISTIAN,

    Plaintiff,

v.

WARDEN RANDY TOOLE; MS. THOMAS; MS. REGISTER; MR. ALLEN; LARRY BREWTON; and MR. BROOKS,

    Defendants.

CIVIL ACTION NO.: 6:15-cv-38

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who was formerly housed at Hays State Prison in Trion, Georgia, filed a 42 U.S.C. § 1983 action, contesting certain conditions of his confinement while he was housed at Georgia State Prison in Reidsville, Georgia. (Doc. 1.) On August 22, 2016, Defendants Toole, Thomas, Allen, Register, and Brooks ("Defendants")[1] filed a Motion for Summary Judgment. (Doc. 42.) The Clerk of Court mailed a Notice to Plaintiff advising him that Defendants filed a Motion for Summary Judgment and that a response must be filed by September 15, 2016. (Doc. 43.) That Notice further advised Plaintiff that:

> 1. If you do not timely respond to this motion . . . , the consequence may be that the Court will deem the motion unopposed, and the Court may enter judgment against you.

---

[1] On January 26, 2017, the Court once again ordered service upon Defendant Brewton. (Doc. 55.) As Defendant Brewton has yet to be served with a copy of Plaintiff's Complaint, as amended, he has not joined in the Motion for Summary Judgment. Additionally, counsel for those Defendants who have been served with the Complaint recently filed a Suggestion of Death as to Defendant Brewton. (Doc. 57.) Thus, the Court refers to the moving Defendants (Toole, Thomas, Allen, Register, and Brooks) collectively as "Defendants" throughout this Report. Despite these circumstances, the Court addresses Plaintiff's claims against him in Section IV of this Report. Additionally, the Court dismissed all claims against Defendants Delouche and Fowler on September 20, 2016. (Doc. 47.) Thus, the Court **DIRECTS** the Clerk of Court to ensure that the record reflects the termination of those two Defendants.

2. If your opponent's Statement of Material Facts sets forth facts supported by evidence, the Court may assume that you admit all such facts unless you oppose those facts with your own Statement of Material Facts which also sets forth facts supported by evidence.

3. If a summary judgment motion is properly supported, you may not rest on the allegations in your [Complaint] alone.

(Id.)

Plaintiff filed no Response to Defendants' Motion for Summary Judgment, and the Court received no indication this Notice or Defendants' Motion was undeliverable. However, "the district court cannot base the entry of summary judgment on the mere fact that the motion [is] unopposed but, rather, must consider the merits of the motion." United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101 (11th Cir. 2004) (citation omitted). Specifically, the court "must still review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009) (citation omitted).

Based on the reasons which follow, I **RECOMMEND** the Court **GRANT in part** and **DISMISS as moot in part** Defendants' unopposed Motion and **DISMISS** Plaintiff's claims against Defendants Toole, Thomas, Allen, Register, and Brooks. I also **RECOMMEND** the Court **DISMISS** Plaintiff's claims against Defendant Brewton. Accordingly, I further **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and **DENY** Plaintiff *in forma pauperis* status on appeal.

## BACKGROUND[2]

Plaintiff's claims stem from an attack he suffered at the hands of another inmate on October 17, 2013. (Doc. 16, p. 1.) On the date of the attack, Plaintiff and his roommate were escorted from their cell to a recreation pen for one hour of recreation. (Id.) At the end of the recreation period, Defendant Thomas handcuffed Plaintiff's and his roommate's hands behind their backs and told them to exit the recreation pen and walk back to their dorm. (Id.) Defendant Register told Plaintiff and his roommate to continue to his dorm room without an escort, which Plaintiff contends is against proper procedure. (Id.) Once Plaintiff reached the top of the stairs, Officer Allen was in the vicinity. (Id.) Then, "without warning", inmate Porter (who was not Plaintiff's roommate) stabbed Plaintiff several times from behind. According to Plaintiff, inmate Porter should have been locked in a secure recreation pen. (Id. at pp. 1–2.)

Once the attack took place, no officers in the area intervened on Plaintiff's behalf to try and stop the assault. (Id. at p. 2.) Plaintiff claims that, at the beginning of the attack, Ms. Thomas, Ms. Register, Mr. Allen, and Mr. Brooks were in the area. (Id.) Once Plaintiff saw none of these officers were trying to stop the attack, he attempted to run from inmate Porter, but inmate Porter chased Plaintiff down and continued to stab him. (Id.) At this point, more officers arrived, including Defendants Toole and Brewton. (Id.) However, none of the officers attempted to stop the assault or otherwise intervened on Plaintiff's behalf. (Id.) Inmate Porter stopped the attack "on his own free will". (Id.) Plaintiff was then escorted to the medical unit, where he was diagnosed with a punctured lung, and he was then rushed to a local hospital for treatment for several days. (Id.)

---

[2] The recited allegations are taken from Plaintiff's Complaint and are viewed in the light most favorable to Plaintiff, the non-moving party. However, this is not to say the Court accepts the allegations contained in Plaintiff's Complaint as true. Defendants offer their own version of events through their Motion and Statement of Material Facts, to which Plaintiff failed to offer a response. Defendants' undisputed material facts are set forth in Section II of this Report.

**DISCUSSION**

Defendants maintain they are entitled to summary judgment because they were not in a position to intervene on Plaintiff's behalf. Defendants also contend they are entitled to qualified immunity. Additionally, Defendants assert Defendant Brewton has not been served properly and should be dismissed as a named Defendant pursuant to Federal Rule of Civil Procedure 4(m). In moving for summary judgment, Defendants rely on their Statement of Material Facts, a copy of the transcript from Plaintiff's deposition, several declarations sworn under penalty of perjury, and a DVD depicting the October 17, 2013, incident.

As set forth below, the undersigned agrees that Plaintiff fails to establish a genuine dispute as to his failure to intervene claims, and Defendants' Motion is due to be granted as a result.

**I.     Standard of Review**

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and (Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party

must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cty., Fla., 630 F.3d 1346, 1353 (11th Cir. 2011).

## II. Plaintiff's Failure to Intervene Claims

Plaintiff's claims and Defendants' Motion give rise to a discussion of the Eighth Amendment of the Constitution. The Eighth Amendment can impose upon prison officials the duty to intervene in some cases. In Johnson v. Boyd, 568 F. App'x 719 (11th Cir. 2014), the Eleventh Circuit Court of Appeals found that the plaintiff failed to state a claim for failure to intervene where another inmate attacked the plaintiff, but the complaint was lacking any allegations about the duration of the fight or that "the officers waited an unreasonable amount of time to intervene after Hanley attacked [the plaintiff]." The court stated:

> The district court partially construed Johnson's complaint as a 'failure to intervene' claim, citing Ensley v. Soper, 142 F.3d 1402, 1407 (11th Cir. 1998), which holds that an officer has a duty to intervene if he observes a constitutional violation and is in a position to intervene. While it is well settled that Ensley applies to situations where one officer observes a fellow officer violating a constitutional right, typically by using excessive force, we have not explicitly adopted this holding in a situation involving an officer observing a fight between inmates.

Id. at 722 n.2 (emphasis added) (internal citation omitted).

5

Despite this footnote, the Eleventh Circuit has held that a prison official can be liable under the Eighth Amendment for failing to take reasonable steps to intervene on behalf of the victim of an ongoing assault by another inmate. Murphy v. Turpin, 159 F. App'x 945, 948 (11th Cir. 2005) (applying deliberate indifference standard to claim that prison official failed to intervene in inmate-on-inmate assault). "Prison correctional officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence." Terry v. Bailey, 376 F. App'x 894, 896 (11th Cir. 2010) (citing Ensley, 142 F.3d at 1407). "However, in order for liability to attach, the officers must have been in a position to intervene." Id. (internal citation omitted). Indeed, the Eleventh Circuit found in Johnson that a failure to intervene claim, similar to a failure to protect claim, would require allegations that: (1) another inmate's physical assault created a substantial, objective risk of injury, (2) of which a defendant is subjectively aware, (3) the defendant was in a position to intervene, and (4) the defendant did not respond reasonably to the risk of injury. See Johnson, 568 F. App'x at 724–25. In situations in which an inmate seeks to hold officers liable for failing to intervene in an attack at the hands of another inmate, liability attaches only if the officer "'was physically able and had a realistic chance to intervene and act in time to protect the inmate plaintiff.'" Smith v. Andrews, CV 114-206, 2016 WL 6818755, at *4 (S.D. Ga. Nov. 16, 2016) (quoting Glispy v. Raymond, 2009 WL 2762636, *3 (S.D. Fla. 2009)), *report and recommendation adopted*, 2016 WL 7197446 (S.D. Ga. Dec. 9, 2016). "Regardless of the presence or absence of a weapon in the hands of the attacking inmates, 'no rule of constitutional law requires unarmed officials to endanger their own safety in order to protect a prison inmate threatened with physical violence.'" Seals v. Marcus, No. 1:11-CV-99-WLS, 2013 WL 656873, at *8 (M.D. Ga. Jan. 25, 2013) (quoting Longoria v. Texas, 473 F.3d 586, 594 (5th Cir. 2006)); see also Prosser v. Ross, 70 F.3d

1005, 1008 (8th Cir. 1995) ("[P]rison guards have no constitutional duty to intervene in the armed assault of one inmate upon another when intervention would place the guards in danger of physical harm."); Winfield v. Bass, 106 F.3d 525, 532 (4th Cir. 1997) ("[A]ll of the authority of which we are aware leads to the conclusion that such heroic measures are not constitutionally required.").

In this case, Defendants unrefuted Statement of Material Facts and other exhibits establish the following. Defendants Allen, Brooks, Register, and Thomas were assigned to the G-Building escort post on October 17, 2013. As part of their duties, these Defendants monitored the G-south small yards. (Doc. 42-2, p. 1.) Plaintiff and inmate Porter were inmates housed in administrative segregation on this date and were allowed an hour of outside time in an enclosed chain link holding pen. (Id.) Plaintiff and inmate Porter were housed in separate holding pens in the G-south yard on October 17, 2013, and Defendants Brooks and Thomas were escorting Plaintiff and his cellmate from the holding pen back to the dormitory while Defendants Allen and Register were standing on the stairs leading into the yard. (Doc. 42-5, p. 2; Doc. 42-7, p. 2.) Plaintiff was handcuffed behind his back prior to this escort, in accord with standard procedure. (Doc. 42-5, p. 2; Doc. 42-6, p. 2; Doc. 42-7, p. 2; Doc. 42-8, p. 2.) However, inmate Porter, who was still in his holding pen, was not handcuffed, per standard procedure, and escaped his holding cell. (Doc. 42-5, p. 2; Doc. 42-6, p. 2; Doc. 42-8, p. 2.)

Inmate Porter came up behind Defendants Brooks and Thomas, Plaintiff, and his cellmate by running toward them "in an aggressive manner." (Doc. 42-5, p. 3; Doc. 42-7, p. 2.) Defendants Allen and Register immediately yelled to Defendants Brooks and Thomas that inmate Porter was approaching them, but Defendants Brooks and Thomas did not see inmate Porter until he reached them. (Doc. 42-7, p. 2; Doc. 42-8, p. 2.) Inmate Porter began stabbing

7

Plaintiff. Defendant Allen called into his handheld radio for a "10-78", which means that officers needed immediate assistance in the yard, and he ran into the yard. (Doc. 42-5, p. 3.) According to Defendants, there was nothing Defendants Brooks or Thomas could have done at that time to prevent inmate Porter from stabbing Plaintiff. (Doc. 42-6, pp. 2–3; Doc. 42-8, pp. 2–3.) Plaintiff then ran twenty to thirty feet in an attempt to get away from inmate Porter, but inmate Porter was able to catch Plaintiff and stab him multiple times before he stopped. Defendants and other correctional officers had given inmate Porter several direct orders to stop stabbing Plaintiff and to drop his weapon, (doc. 42-5, p. 3; doc. 42-6, p. 6; doc. 42-7, p. 2; doc. 42-8, p. 3), and inmate Porter threatened to stab anyone who attempted to intervene, (doc. 42-7, p. 2). Defendant Toole asserts he was not on the yard at the time of the attack, did not witness any part of the attack, and only learned of this attack later in the afternoon of October 17, 2013. (Doc. 42-9, p. 2.) In fact, Defendants Allen, Thomas, Register, and Brooks all stated they did not recall seeing Defendant Toole in the yard at the time of the attack. (Doc. 42-5, p. 5; Doc. 42-6, p. 5; Doc. 42-7, p. 3; Doc. 42-8, p. 5.) Plaintiff testified that Defendant Toole was not on the yard at the time of this attack. (Doc. 42-4, p. 5.)

Defendants declare that, from the time inmate Porter approached Plaintiff until the time he was handcuffed and taken from the scene, approximately two and a half minutes elapsed. (Doc. 42-9, p. 4; Doc. 42-1, p. 9.) In addition, Defendants testify that less than one minute elapsed between the time inmate Porter began stabbing Plaintiff until he ceased after chasing Plaintiff in the yard. (Doc. 42-5, p. 4; Doc. 42-6, p. 3; Doc. 42-7, p. 3; Doc. 42-8, p. 3.) Further, Defendants contend they were not armed with weapons of any sort, such as guns, batons, or pepper spray as part of their assignments in the G-south yard, nor was there a weapon repository nearby where the officers could retrieve weapons quickly. (Doc. 42-5, p. 4; Doc. 42-6, pp. 3–4;

Doc. 42-7, p. 3; Doc. 42-8, pp. 3–4.) Moreover, Defendants Allen, Thomas, Register, and Brooks were wearing standard-issue "soft" uniforms, which comprised of a shirt and pants lacking any sort of protective padding or materials. (Doc. 42-5, p. 4; Doc. 42-6, p. 4; Doc. 42-7, p. 3; Doc. 42-8, p. 4.)

The uncontroverted evidence before the Court reveals that Defendants were not in a position to intervene safely in inmate Porter's stabbing of Plaintiff. Defendants submitted a DVD of the stationary camera which recorded the October 17, 2013, events.[3] This DVD shows Plaintiff and his cellmate being handcuffed and escorted by two correctional officers from the recreation cage to the dormitory when inmate Porter began running from the back of this cage. (Doc. 44, 2:33:57.) Inmate Porter approached the back of this escort and began stabbing Plaintiff while two other officers were climbing down the stairs. Plaintiff ran away from the initial stabbing, and inmate Porter gave chase. Plaintiff and inmate Porter were then out of view of the camera. (Id. at 2:34:02–2:34:07.) One of the officers immediately began speaking into a radio. (Id. at 2:34:18.) Even though the camera did not capture what was happening between Plaintiff and inmate Porter at this time, the DVD shows that several officers approached the scene, and it appears these officers were yelling at inmate Porter. (Id. at 2:34:20–2:35:15.) Inmate Porter was handcuffed and escorted away from the yard. (Id. at 2:36:34.) None of the officers present at the scene appeared to have been carrying any sort of weapon on their person.

Contrary to Plaintiff's claim that inmate Porter's attack on Plaintiff lasted "at least 45 minutes" (doc. 42-4, p. 6), the uncontroverted evidence shows that this entire incident barely lasted more than two and a half minutes' time. In addition, Plaintiff testified during his

---

[3] While this DVD is not of the best quality and there is no audio, it is of sufficient enough quality that the Court was able to discern this DVD supports Defendants' accounts of the events of October 17, 2013.

9

deposition that he did not know if Defendants or the other officers had any weapons.[4] (Id. at p. 10.) Further, there is no evidence contradicting Defendants' accounts that they were not wearing any material which could have protected them should Porter have turned to attack them. Moreover, there is no evidence before the Court that Defendants were carrying any weapon they could have used to protect themselves or to stop inmate Porter's attack. Thus, the record simply lacks any evidence that, during the less than a minute that Porter attacked Plaintiff, Defendants could have safely and effectively intervened on Plaintiff's behalf in a violent attack by an armed inmate.

Additionally, there is no evidence that Defendant Toole was present on the G-south yard at any time during inmate Porter's attack of Plaintiff. Defendant Toole describes himself as a middle-aged, white male who would have been wearing a tie and a long-sleeved button down shirt, (doc. 42-9, p. 4); however, the only white male wearing a long-sleeved button down shirt on the DVD does not look middle-aged, and he was not wearing a tie.

Plaintiff has failed to establish that Defendants violated the Eighth Amendment by failing to intervene on his behalf. Defendants have demonstrated that they were not in a position to safely stop inmate Porter's attack. In contrast, Plaintiff fails to present any evidence that inmate Porter's attack lasted as long as he claims it did or that Defendants were in a position to intervene and failed to do so. In fact, Plaintiff's account of this incident is wholly contradicted by the evidence before the Court, particularly the DVD of this incident, and the Court need not accept Plaintiff's account. Joassin v. Murphy, 661 F. App'x 558, 559 (11th Cir. 2016) (recognizing that, under Scott v. Harris, 550 U.S. 372, 380 (2007), courts "should disregard a party's sworn

---

[4] Plaintiff also testified that Defendants Toole and Brewton and the other correctional officers on the scene had pepper spray and "pending enough weapons to uphold and stop him . . . and to protect me, . . . intervening the situation . . . which none of this occurred." (Doc. 42-4, p. 6.) However, this testimony is not supported by the record, and Plaintiff contradicted this testimony at the end of his deposition.

account of the events if it is 'blatantly contradicted by the record, so that no reasonable jury could believe it.'").

Plaintiff has failed to establish a genuine dispute as to any fact material to his failure to intervene claims against Defendants Toole, Thomas, Allen, Register, and Brooks. Thus, the Court should **GRANT** these Defendants summary judgment and **DISMISS** all claims against them **WITH PREJUDICE**. It is unnecessary to address Defendants' qualified immunity claims, and the Court should **DISMISS as moot** this portion of Defendants' Motion. Flowers v. Lane, No. 2:14-CV-138, 2016 WL 1627679, at *6 (S.D. Ga. Apr. 22, 2016) (citing Martinez v. Burns, 459 F. App'x 849, 851 (11th Cir. 2012) (a qualified immunity defense need not be addressed if the plaintiff cannot sustain an underlying constitutional claim), *report and recommendation adopted*, No. 2:14-CV-138, 2016 WL 2889042 (S.D. Ga. May 17, 2016).

### III.     Dismissal for Lack of Proper Service

Defendants maintain Plaintiff's claims against Defendant Brewton should be dismissed because he has not been served with a copy of Plaintiff's Amended Complaint within the time limits set forth by Federal Rule of Civil Procedure 4(m). (Doc. 42-1, p. 21.) However, the Court directed Andrew Magruder, Defendants' counsel, to assist the Court in having Plaintiff's Amended Complaint served upon Defendant Brewton, and Mr. Magruder complied with this directive. (Docs. 52, 54.) The Court once again directed service of Plaintiff's Complaint upon Defendant Brewton in its January 26, 2017, Order. (Doc. 55.) Because the Court has extended the time for service upon Defendant Brewton, the Court should **DISMISS as moot** this ground of Defendants' Motion.

## IV.     Dismissal of Claims Against Defendant Brewton

Nevertheless, Defendants' counsel filed an Amended Suggestion of Death as to Defendant Brewton on February 22, 2017, and informed the Court that Larry Brewton passed away on February 13, 2017. (Doc. 57.) "'[G]enerally, in a federal civil rights action, state survival statutes govern the issue of survivability to the extent they are not inconsistent with federal law, following the death of a person who has been deprived of his or her civil rights, or who has deprived another of his or her civil rights.'" Simmons v. Prison Health Servs., Inc., No. CV408-239, 2009 WL 2914103, at *2 (S.D. Ga. Sept. 10, 2009) (quoting 1 C.J.S. Abatement and Revival § 173 (June 2009); see also Robertson v. Wegmann, 436 U.S. 584, 593–94 (1978) (applying state survivability law in 42 U.S.C. § 1983 context). Under Georgia law, it appears Defendant Brewton's death would not abate Plaintiff's claims against him. See O.C.G.A. § 9-2-41; see also Fed. R. Civ. P. 25.

Even though Plaintiff's claims against Defendant Brewton potentially survive his death, the Court should grant Defendant Brewton summary judgment. Defendant Brewton did not move for summary judgment, but that is only because he was never served with Plaintiff's Complaint. It is now readily apparent that Defendant Brewton is entitled to summary judgment for the same reasons Defendants Toole, Thomas, Allen, Register, and Brooks are so entitled. Thus, the Court should not require the parties to expend the effort and costs of substituting a party for Defendant Brewton and fully litigating Plaintiff's claims against Defendant Brewton only for those claims to be dismissed. The more "just, speedy, and inexpensive" path is to address the fatal flaws in Plaintiff's claims against Defendant Brewton at this stage.

As with the other Defendants, there is no evidence that Defendant Brewton violated Plaintiff's constitutional rights by failing to intervene in inmate Porter's attack. The undisputed

evidence before the Court reveals that, even if Defendant Brewton arrived at the scene of inmate Porter's attack of Plaintiff—as Plaintiff claims—Defendant Brewton would not have been in a position to intervene safely. Inmate Porter's attack on Plaintiff lasted less than a minute, and the entire incident happened over the course of two and a half minutes' time. The uncontroverted video evidence in this case demonstrates that no officer, including Defendant Brewton, was in a position to safely stop inmate Porter's attack of Plaintiff. Even if Defendant Brewton was at the scene of the attack, and thus, was one of the officers in the video, it appears he was not carrying a weapon which he could have used to intervene in the attack, nor was he wearing any protective materials.

In short, "as a matter of judicial economy", the Court should find Defendant Brewton is entitled to summary judgment in his favor and **DISMISS** Plaintiff's claims against Defendant Brewton. See Waldrop v. Evans, 681 F. Supp. 840, 856 n.10 (M.D. Ga. 1988) (finding defendant entitled to summary judgment on the merits of plaintiff's Section 1983 even though defendant passed away, a suggestion of death was filed, and no motion for substitution was filed at the time of the court's determination).

## V. Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has, of course, not yet filed a notice of appeal, it is proper to address these issues in the Court's order of dismissal. See Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this

context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Or, stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's action, Defendants' Motion for Summary Judgment, and counsel's Suggestion of Death, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **GRANT in part** and **DISMISS as moot in part** Defendants' unopposed Motion and **DISMISS** Plaintiff's claims against the moving Defendants. I also **RECOMMEND** the Court **DISMISS** Plaintiff's claims against Defendant Brewton. Accordingly, I further **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and **DENY** Plaintiff *in forma pauperis* status on appeal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later

challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 22nd day of February, 2017.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA